## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MEAH DESMARE and
NORMA GARNAND,

       Plaintiffs,

v.                                                                    No. CIV 07-199 JB/RHS

STATE OF NEW MEXICO and
TED McCUTCHEON, Individually,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Compel, filed July 4, 2007 (Doc. 22)("Motion to Compel").  The primary issue is whether the Court should compel Defendant State of New Mexico (the "State") to produce to Plaintiffs Meah Desmare and Norma Garnand ("Plaintiffs") the investigatory report that the New Mexico Administrative Office of the Courts ("AOC") prepared regarding the January 9, 2006 incident that is the subject of this lawsuit. Because the Court believes that the information the Plaintiffs seek is relevant and because Defendant Ted McCutcheon has not demonstrated that the information is privileged, the Court will grant the Plaintiffs' motion in part and order the State to produce the report.  Because the Court believes that the unique factual and procedural circumstances of this motion make an award of attorneys' fees and costs inappropriate, the Court will deny the motion in part.

### FACTUAL BACKGROUND

In response to a complaint that Desmare made to her supervisor regarding an incident of sexual harassment in the workplace involving McCutcheon, then a New Mexico State Magistrate Judge, the AOC performed an in-house investigation into the allegations.  <u>See</u> Motion to Compel

¶ 2, at 1.  The investigation included witness interviews and statements, including McCutcheon's, and the gathering of related documents in preparation of a report.  See id.  The AOC's file also contains documents related to both Plaintiffs' complaints of a hostile work environment based on an alleged pattern of McCutcheon's sexually charged misconduct in the workplace.  See Plaintiffs' Memorandum Brief in Support of Motion to Compel, filed July 4, 2007 (Doc. 23)("Plaintiffs' Memorandum").

## PROCEDURAL BACKGROUND

The Plaintiffs filed their Complaint in this case on February 27, 2007.  See Complaint, filed February 27, 2007 (Doc. 1).  In the Complaint, both Plaintiffs assert a claim against the State for sexual harassment based on a theory of hostile work environment in violation of Title VII.  See id. ¶¶ 36-43, at 7-9.  Desmare also asserts two additional claims against McCutcheon: (i) a claim for violation of her civil rights brought pursuant to 42 U.S.C. § 1983, see id. ¶¶ 44-48, at 9-10; and (ii) a state-law tort claim for assault and battery, see id. ¶¶ 49-54, at 10-11.

On June 18, 2007, McCutcheon's counsel informed the State's counsel that he objected to the State producing the AOC file to the Plaintiffs.  See Plaintiffs' Memorandum, Exhibit 3, Letter from Michael J. Cadigan to Gianna M. Mendoza at 1 (dated June 18, 2007).  In his June 18, 2007 letter to the State's counsel, McCutcheon's counsel asserted his belief that the attorney-client privilege and the work-product doctrine protected the materials contained in the AOC file.  See id. at 1.  McCutcheon composed a privilege log identifying the nature of his objections to the documents in the AOC file.  See Plaintiffs' Memorandum, Exhibit 1, Defendant Ted McCutcheon's Privilege Log: Desmare et al. v. State of New Mexico, et al. Administrative Office of the Courts Investigation File Bates Numbered 0001-0056 ("Privilege Log").

On June 21, 2007, counsel for the State informed the Plaintiffs' counsel that she believed the AOC file was discoverable, but, because of the objections that McCutcheon raised, the State would not produce the materials. See Plaintiffs' Memorandum, Exhibit 2, Letter from Gianna M. Mendoza to Joleen K. Youngers, Philip B. Davis, and Michael J. Cadigan at 1 (dated June 21, 2007)("We agree that said information is discoverable and will not join in Defendant McCutcheon's objection."). The State's counsel explained that "we want to make it crystal clear AOC intends to exercise its Faragher/Ellerth defense," and therefore acknowledged that the AOC file was at issue and discoverable. Id. at 1-2. Accordingly, the State's counsel stated that the State would not join in McCutcheon's objection to the production of the file. See id. Nevertheless, the State's counsel emphasized that, to avoid exposing the state to litigation that McCutcheon might potentially raise related to an invasion of his privacy, the State would not produce the AOC file without direction from the Court. See id.

The Plaintiffs filed their motion to compel production of the AOC file on July 4, 2007. The Plaintiffs request the Court order the State to produce the AOC file, and to award the Plaintiffs reasonable costs and fees associated with bringing this motion. McCutcheon filed a response in opposition to the motion on July 24, 2007. See Defendant Ted McCutcheon's Response to Motion to Compel, filed July 24, 2007 (Doc. 34)("McCutcheon's Response"). In his response, McCutcheon asserts that the attorney-client privilege and the work-product doctrine protect the materials the Plaintiffs are requesting. See id. at 1. In addition to his response, McCutcheon also submitted a copy of the AOC file for the Court's in camera review. See Letter from Michael J. Cadigan to the Court (dated August 7, 2007). The State has not submitted any briefing taking a position on this

motion.[1]

On August 6, 2007, the Plaintiffs filed a Reply to McCutcheon's Response, and a notice that briefing was complete on their motion to compel and that the issue was ripe for adjudication.  See Plaintiffs' Reply in Support of Motion to Compel, filed August 6, 2007 (Doc. 39)("Plaintiffs' Reply"); Notice of Completion of Briefing, filed August 6, 2007 (Doc. 38).  The Plaintiffs represent that they have made a good-faith attempt to confer with opposing counsel to resolve this matter before asking the Court to intervene.  See Motion to Compel ¶ 8, at 3.  The Plaintiffs also represent that the parties agree that the record before the Court is sufficient to establish the existence of a concrete controversy between the parties and is adequate to permit the Court to address and resolve this discovery dispute.  See id.

## RELEVANT LAW REGARDING DISCOVERY

Discovery under rule 26 of the Federal Rules of Civil Procedure is liberal, allowing parties the right to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  This principle of broad discovery is intended to allow the parties to learn as much as they can about each other's claims and defenses before trial.  See Herbert v. Lando, 441 U.S. 153, 177 (1979)("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials.").  The federal discovery rules are a reflection of the courts' and Congress' recognition

---

[1]Pursuant to the Court's local rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).

that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Rule 37(a)(2)(A) provides that, if a party fails to make a disclosure that rule 26 requires, the discovering party may move for an order compelling the disclosure. See Fed. R. Civ. P. 37(a)(2)(A). The motion to compel must include a certification that the movant has conferred or attempted to confer with the other party or parties, and made a good-faith attempt to resolve the discovery dispute before requesting the court's intervention. See Lafleur v. Teen Help, 342 F.3d 1145, 1151 (10th Cir. 2003). Finally, rule 37(a)(4)(A) provides that, under most circumstances, if a party's motion to compel under rule 37 is granted, "the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(4)(A).

## ATTORNEY-CLIENT PRIVILEGE AND ATTORNEY WORK-PRODUCT DOCTRINE

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." United States v. Phelan, 3 Fed. Appx. 716, 718 (10th Cir. 2001)(quoting In re Grand Jury Subpoena Duces Tecum, 697 F.2d 277, 278 (10th Cir.1983))(internal quotation omitted). The privilege is designed to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)(quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). To assert the privilege's protection, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998). "A party claiming the attorney-client privilege must prove its applicability,

which is narrowly construed." Foster v. Hill (In re Foster), 188 F.3d 1259, 1264 (10th Cir. 1999).

The United States Court of Appeals for the Tenth Circuit has adopted a five-part test "to determine whether an officer may assert a personal privilege with respect to conversations with corporate counsel despite the fact that the privilege generally belongs to the corporation." Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d 653, 659 (10th Cir. 1998).

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

Id. (quoting United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 215 (2d Cir. 1997)).  To establish personal privilege, an officer must satisfy these elements, because "[a] personal privilege does not exist merely because the officer 'reasonably believed' that he was being represented by corporate counsel on an individual basis." Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d at 659.  Federal courts have acknowledged that recognizing a personal privilege based solely on an officer's reasonable belief "would provide employees seeking to frustrate internal investigations with an exceedingly powerful weapon, and would stray quite far from the principle that the attorney-client privilege should be strictly confined in order to allow public access to every man's evidence." United States v. Int'l Bhd. of Teamsters, 119 F.3d at 216 n.2 (internal citation and quotations omitted).

The attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Qwest Commc'ns

Int'l Inc., 450 F.3d 1179, 1186 (10th Cir. 2006)(quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).   The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 668 (10th Cir. 2006)(citing Fed. R. Civ. P. 26(b)(3)).   See Hickman v. Taylor, 329 U.S. at 510 ("[A]n attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties . . . falls outside the arena of discovery.").   "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." In re Qwest Commc'ns Int'l Inc., 450 F.3d at 1186. Similar to the attorney-client privilege, "[t]he party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).   Moreover, the Tenth Circuit has held that "production of work-product material during discovery waives a work-product objection." In re Qwest Commc'ns Int'l Inc., 450 F.3d 1186.

### LAW REGARDING THE FARAGHER-ELLERTH DEFENSE

Pursuant to the Supreme Court of the United States' holdings in Faragher v. City of Boca Raton, 524 U.S. 775 (1999) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), "an employer is shielded from vicarious liability for Title VII violations where no tangible employment action was taken against the employee if it can prove a two-pronged affirmative defense." McInnis v. Fairfield Cmtys., Inc., 458 F.3d 1129, 1139 (10th Cir. 2006).   To assert the Faragher/Ellerth defense successfully, an employer must prove that: "[I] 'the employer exercised reasonable care to

prevent and correct promptly any sexually harassing behavior,' and [ii] the plaintiff 'unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'"   McInnis v. Fairfield Cmtys., Inc., 458 F.3d at 1139.   See Dees v. Johnson Controls World Servs., Inc., 168 F.3d 417, 422 (10th Cir. 1999).   In applying the Faragher/Ellerth defense, "the employer's notice of the harassment is of paramount importance; if the employer had notice of the harassment (which is required for direct liability but not required for vicarious liability), then it is liable unless it took prompt corrective action."   Dees v. Johnson Controls World Servs., Inc., 168 F.3d at 422.   Finally, when an employer pleads the defense of adequate investigation, numerous federal courts have held that the employer waives privileges for documents related to that investigation.   See McKenna v. Nestle Purina PetCare Co., No. 2:05-CV-0976, 2007 U.S. Dist. LEXIS 8876, at **10-11 (S.D. Ohio Feb. 5, 2007)("There is case law suggesting that by pleading the [Faragher/Ellerth] defense[,] . . . an employer may waive privileges for documents related to that investigation."); Jones v. Rabanco, Ltd., No. C03-3195P, 2006 U.S. Dist. LEXIS 58178, at *10 (W.D. Wash. Aug. 18, 2006)("[W]here the affirmative defense is asserted, attorney-client and work product privileges may be waived if they are being used to shield information regarding an investigation or remedial efforts that the Defense has put at issue through the assertion of this defense."); Walker v. County of Contra Costa, 227 F.R.D. 529, 533 (N.D. Cal. 2005)("Several cases have held that defendants also lose the work product and attorney-client privileges once they assert the investigation as an affirmative defense.").

## ANALYSIS

It is important to note that the parties do not dispute that the contents of the AOC file are relevant to the matters at issue in this lawsuit.  Moreover, the State has not argued that the attorney-

client privilege or the work-product doctrine protect the contents of the file.  The State believes that the contents of the file are discoverable and is prepared to produce the documents.

In his Response to the Plaintiffs' motion, McCutcheon confines his argument to his assertion that his attorney-client privilege and the work-product doctrine protect the contents of the file. Because the Court agrees that the AOC file is relevant to both the Plaintiffs' claims and the State's defense, and because the Court does not believe that any privilege or work-product protection that McCutcheon holds protects the AOC file, the Court will grant the Plaintiffs' motion and order the State to produce the file to the Plaintiffs.

## I.    THE STATE SHOULD PRODUCE ALL THE DOCUMENTS FOR WHICH McCUTCHEON HAS NOT ASSERTED A PRIVILEGE.

The Court notes that McCutcheon has not asserted a privilege with respect to all of the documents in the file.  Specifically, the log does not address pages 0033-43 or 0045-56.  See Plaintiffs' Memorandum at 3-4; Privilege Log.  When a party withholds information under the federal discovery rules, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  Fed. R. Civ. P. 26(b)(5)(A).  Because the parties do not dispute that the documents in the AOC file are relevant, and because the Court believes that the Plaintiffs' request for those materials is reasonably calculated to lead to the discovery of admissible evidence, the Court will order the State to produce all documents contained in the AOC file for which McCutcheon has not asserted a privilege.

## II.    THE ATTORNEY-CLIENT PRIVILEGE DOES NOT PROTECT McCUTCHEON'S STATEMENTS TO THE AOC INVESTIGATOR.

McCutcheon states that, "as part of an investigation into the alleged sexual harassment of the Plaintiffs," he had several conversations with Lorri Hatcher.  McCutcheon's Response at 2. Hatcher is the AOC's Human Resources Director and was responsible for conducting the investigation into the charges that the Plaintiffs raised against McCutcheon.  See id. at 4; Plaintiffs' Reply at 1-2.  Hatcher's supervisor, Gina Maestas, is an attorney; Hatcher is not an attorney.  See McCutcheon's Response at 4; Plaintiffs' Reply at 2.

The Court notes that the parties have not described the administrative structure of the AOC in detail or expressly stated that McCutcheon was an employee of the AOC.  Nevertheless, in their briefing, both parties address the attorney-client privilege issue as if McCutcheon was an employee of the AOC.  Moreover, the five-element test that the Court has employed in resolving this motion is the test McCutcheon advances as appropriate in his Response to the Plaintiffs' motion.  See McCutcheon's Response at 3.

The Supreme Court of the United States has acknowledged that for both individuals and organizations such as corporations, "attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients . . . [and] thereby encourages observance of the law and aids in the administration of justice."  Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985).

> The administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

Id.  While an entity must act through its agents, "[a]ny privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not to the officer." Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d at 658.  Accordingly, before the Court should allow McCutcheon to assert attorney-client privilege with regard to communications he had with the AOC's lawyers, the Court must carefully scrutinize the circumstances of those communications to determine whether McCutcheon acquired a personal privilege.  Any other approach "would provide employees seeking to frustrate internal investigations with an exceedingly powerful weapon, and would stray quite far from the principle that the attorney-client privilege should be strictly confined in order to allow public access to every man's evidence." United States v. Int'l Bhd. of Teamsters, 119 F.3d at 216 n.2 (internal citation and quotations omitted).

To assert a personal attorney-client privilege for communications with Hatcher successfully, McCutcheon must demonstrate that: (i) he approached Hatcher seeking legal advice; (ii) he made it clear to Hatcher that he was seeking legal advice in his individual capacity; (iii) Hatcher deemed it appropriate to communicate with him in his individual capacity, knowing that a possible conflict could arise; (iv) his conversations with Hatcher were confidential; and (v) his conversations with Hatcher did not concern matters within the AOC or the general affairs of the AOC.  See Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d at 659.  McCutcheon argues that he has satisfied each of these requirements and that the attorney-client privilege protects his communications with Hatcher.  See McCutcheon's Response at 3.  The Court disagrees.

McCutcheon states in his response and in his affidavit that, "when [he] spoke to [Hatcher] regarding the claims made by [the Plaintiffs], [he] did so for the purpose of obtaining legal services."

-11-

McCutcheon's Response, Exhibit A, Affidavit of Ted McCutcheon in Support of Defendant's Response to Motion to Compel ¶ 1, at 1 ("McCutcheon Affidavit").  See McCutcheon's Response at 3 ("McCutcheon spoke with Ms. Hatcher in an attempt to obtain legal advice about a pending lawsuit against himself in his individual capacity.").  While McCutcheon states, in both his Response and his Affidavit, that he "spoke" to Hatcher, see McCutcheon's Response at 3; McCutcheon Affidavit ¶ 1, at 1, he does not state in either document that he approached Hatcher or sought her out for the purpose of seeking legal advice.  Nor does the Court find it reasonable that, "in an attempt to obtain legal advice about a pending lawsuit against himself in his individual capacity," McCutcheon's Response at 3, he spoke to the woman responsible for conducting an investigation into the allegations on his employer's behalf, a woman he acknowledges is not a lawyer, see id. at 4.  The Court also finds it significant that McCutcheon's privilege log does not characterize his interviews with Hatcher as "conversations," "discussions," or "meetings" to obtain legal advice, but rather indicates that the documents for which he asserts attorney-client privilege contain his "response[s] to investigator's questions."  Privilege Log at 1-2.

While McCutcheon states that he understood the purpose of his conversations with Hatcher was to aid in the defense of legal claims that were likely to be made against him personally, see McCutcheon Affidavit ¶ 3, at 1, he does not indicate in what manner he made it clear to Hatcher that he was seeking legal advice in his individual capacity.  McCutcheon alleges in his Response that Hatcher saw fit to speak with him about his personal legal concerns despite being an AOC employee, see McCutcheon's Response at 3, but has not made any allegation that Hatcher acknowledged any conflict of interest and saw fit to speak with him despite that conflict.  McCutcheon asserts that his discussions with Hatcher did not concern the AOC's internal affairs,

but he acknowledges that they involved allegations of sexual harassment that AOC employees made against him.

In addition to the arguments that McCutcheon makes in his Response and Affidavit, the Court has reviewed the entire AOC file that McCutcheon submitted for the Court's in camera review. The Court acknowledges that some of McCutcheon's responses to Hatcher's questions -- as documented in the file -- could be interpreted as incriminating. The Court also recognizes that some of the evidence contained in the file might not be admissible at trial or may only be admissible for limited purposes. At this point in the proceedings, however, the Court's task is not to make findings of fact or admissibility determinations; rather, it is limited to determining whether the material McCutcheon wishes to protect is privileged. The Court does not believe that anything in the AOC file supports McCutcheon's assertion of attorney-client privilege. Nothing in the file suggests that McCutcheon approached Hatcher for legal advice, or that Hatcher or McCutcheon understood the conversations to be in regard to his personal legal concerns. To the contrary, the file suggests that Hatcher contacted McCutcheon to interview him in association with an investigation she was already conducting. The file does not contain any reference to pending or potential legal action against McCutcheon personally, or suggest that Hatcher was meeting with McCutcheon on McCutcheon's behalf.

The Court notes that McCutcheon was a sitting judge at the time of the alleged misconduct and that Hatcher was performing an investigation in accordance with procedures that were required under the Supreme Court of New Mexico's Policies and Procedures. See Plaintiffs' Reply, Exhibit 5, New Mexico Judicial Branch Policies and Procedures. In sum, the Court is not persuaded that, even if McCutcheon believed that his conversations with Hatcher were confidential communications

for the purpose of furnishing him legal advice in his individual capacity, that belief was reasonable. Moreover, even if McCutcheon's belief was reasonable, because he has not satisfied the other elements of the test that the Tenth Circuit has adopted, he cannot successfully assert the attorney-client privilege.  See Intervenor v. United States (In re Grand Jury Subpoenas), 144 F.3d at 659 ("A personal privilege does not exist merely because the officer 'reasonably believed' that he was being represented by corporate counsel on an individual basis.").

The Court concludes that the attorney-client privilege does not protect McCutcheon's statements to Hatcher.  Because the parties do not dispute that the material is relevant to the matters at issue in this case, the Court will order the State to produce the documents for which McCutcheon has asserted attorney-client privilege to the Plaintiffs.

**III.   McCUTCHEON MAY NOT CLAIM WORK-PRODUCT PROTECTION FOR THE STATE'S WORK PRODUCT.**

McCutcheon asserts that the work-product doctrine protects a number of documents in the AOC file.  See Privilege Log at 1-2.  He maintains that Hatcher prepared the report, that Maestas, an attorney, supervised Hatcher, and that litigation was "clearly anticipated."  McCutcheon's Response at 5.

The most significant problem with McCutcheon's argument is that the AOC file is not his work product.  The State has not made it clear whether it does not believe the file contains work product and the file is therefore discoverable, or whether it believes the file is work product and it is waiving work-product protection.  The State has not submitted any briefing on this discovery matter, and therefore the Court is uncertain whether the State considers the contents of the AOC file to be work product for which it is waiving any privilege or not to be work product at all. Nevertheless, the State's counsel has acknowledged that the AOC file is relevant and discoverable,

and wishes to produce it. Even assuming the Court were to decide that the AOC file contains work product, a conclusion it declines to reach for the purposes of this motion, it is the State's work product, not McCutcheon's.  It is the State's prerogative to decide whether strategically to disclose its work product.  The parties do not dispute, and the Court agrees, that the AOC file is relevant. It is the State's decision whether to disclose it.

The Court also notes that McCutcheon has not provided the Court with strong grounds to consider the contents of the AOC file work product.  If the AOC file had been his or his attorney's work product, as the party asserting the privilege, McCutcheon would have had the burden of demonstrating that the work-product doctrine is applicable.  See Resolution Trust Corp. v. Dabney, 73 F.3d at 266.  Neither McCutcheon's privilege log nor his Response, however, explain to the Court on what ground he is asserting work-product protection.  McCutcheon does not expressly state that the documents for which he asserts the privilege contain the "mental impressions, conclusions, opinions, or legal theories" of his counsel.  Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 668.  He does not characterize the documents for which he asserts work-product protection as opinion work-product or non-opinion work product.  While McCutcheon notes that Maestas was Hatcher's supervisor, he does not allege that Maestas directed Hatcher to perform the investigation into the allegations.  McCutcheon states that "[l]itigation was clearly anticipated," but he does not indicate whether litigation against himself, the State, or both, and he does not address the Plaintiffs' contention that the investigation was performed in accordance with standard and mandatory procedures that the Supreme Court of New Mexico promulgated.

The Court need not decide, however, whether the work-product doctrine is applicable to the AOC file.  It is enough to say that any work-product protection that might exist belongs to the State.

The State has determined that the contents of the file are discoverable and wishes to produce it.  The Court will order the State to produce the documents for which McCutcheon has asserted work-product protection to the Plaintiffs.

**IV.    THE COURT NEED NOT DECIDE WHETHER THE STATE MAY WAIVE THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE ON McCUTCHEON'S BEHALF.**

McCutcheon acknowledges that "[i]t makes perfect sense that if a party raises as a defense the conduct of an investigation, that investigation cannot be withheld."  McCutcheon's Response at 6.   He argues the fact that the State may have waived any privilege it holds by asserting the Faragher/Ellerth defense is irrelevant, however, because he is not asserting that defense.  See McCutcheon's Response at 4.  McCutcheon contends that his privilege is separate from the State's and asserts that the State cannot waive the privilege on his behalf.  See id.

Because the Court has already decided that the privileges McCutcheon has asserted do not protect the information contained in the AOC file, the Court need not decide whether the State may waive the privileges on his behalf.  It is enough to say that the State has acknowledged that it will raise the Faragher/Ellerth defense and therefore it has waived any privileges it may have asserted with respect to its investigatory materials.  To the extent that it has not already done so, the Court will order the State to produce any materials it has in its possession relevant to the adequacy of the investigation it performed into the Plaintiffs' allegations of sexual harassment against McCutcheon.

**V.    THE COURT WILL NOT AWARD THE PLAINTIFFS THEIR ATTORNEYS' FEES AND COSTS ASSOCIATED WITH BRINGING THIS MOTION.**

The Plaintiffs request the Court award them attorneys' fees and costs associated with bringing this motion.  Rule 37(a)(4)(A) provides for the award of fees upon the resolution of a party's motion to compel.

> If the motion is granted . . . the court shall, after affording an opportunity to be heard,
> require the party . . . whose conduct necessitated the motion . . . to pay to the moving
> party the reasonable expenses incurred in making the motion, including attorney's
> fees, unless the Court finds . . . that the opposing party's nondisclosure, response, or
> objection was substantially justified, or that other circumstances make an award of
> expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).  The Court is more than merely authorized to award costs and fees; under the language of the rule, and absent a showing that nondisclosure was "substantially justified," the Court "shall" require the party whose conduct necessitated the motion to pay the movant's fees. Fed. R. Civ. P. 37(a)(4)(A).

The Court notes, however, that there is a lack of evidence in the record detailing the procedures that the parties employed to resolve this dispute before requesting the Court to intervene. While the Plaintiffs state that they "have made a good faith attempt to confer with opposing counsel in order to resolve this matter without the Court's intervention," see Motion to Compel ¶ 8, at 3, they do not describe with specificity what those efforts involved.  The Plaintiffs have not referred to any formal requests for production that they served on the State or McCutcheon, and have not included any written correspondence containing an express request for the AOC file.  In short, it seems that the Plaintiffs either requested the documents informally or simply assumed that copies of the documents would be included in the parties' rule 26 disclosures.  Accordingly, this motion has made its way to the Court under unusual facts and circumstances.  The parties appear to have cooperated in framing the issue for the Court; their presentation, however, is more of a request for the Court to rule on whether the AOC file is discoverable, rather than to resolve a traditional discovery dispute.

The Court has reviewed the arguments that McCutcheon has raised in response to the Plaintiffs' motion and does not believe that his grounds for nondisclosure are substantially justified. The Court does not believe that McCutcheon's assertion of the attorney-client privilege was

-17-

reasonable or that he justifiably asserted the applicability of the work-product doctrine in association with work that the State, and not his counsel, performed.  On the other hand, McCutcheon is not the party in possession of the file and he has not refused to disclose any evidence in his possession.  The party in possession of the AOC file, the State, has not objected to its production.  The Court cannot say, that, in light of the objections that McCutcheon raised, the State was unreasonable in wishing the Court to rule on the matter before producing the AOC file.  In sum, the Court believes that, because of the lack of evidence in the record regarding the formal steps that were taken to acquire the AOC file, because McCutcheon has not personally withheld any discovery material in his possession, and because of the unique method in which this dispute has come before the Court, an award of attorneys' fees and costs is not appropriate at this time.

**IT IS ORDERED** that the Plaintiffs' Motion to Compel is granted in part and denied in part. The Court will order the State to produce the AOC file to the Plaintiffs.  The Court will not, however, award the Plaintiffs any attorneys' fees and costs associated with bringing this motion.

_____
UNITED STATES DISTRICT JUDGE

-18-

*Counsel:*

Philip B. Davis
Albuquerque, New Mexico

- - and - -

Joleen K. Youngers
Almanzar & Youngers, P.A.
Las Cruces, New Mexico

      *Attorneys for the Plaintiffs*

Michael J. Cadigan
Cadigan Law Firm, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant Ted McCutcheon*

James P. Sullivan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

      *Attorneys for Defendant State of New Mexico*